GMP:SK/FJN
F. #2018R01812

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

JOANNA DE ALBA,

          Defendant.

– – – – – – – – – – – X

SUBMITTED UNDER SEAL

AFFIDAVIT IN SUPPORT OF MOTION TO REVOKE BAIL AND ISSUE AN ARREST WARRANT

(18 U.S.C. § 3148)
19 CR 563 (DLI)
20 MJ ____

EASTERN DISTRICT OF NEW YORK, SS:

      GEORGE DIETZ, being duly sworn, deposes and states that he is a Special Agent with the United States Attorney's Office for the Eastern District of New York, duly appointed according to law and acting as such.

      In or about and between April 16, 2020 and April 17, 2020, within the Eastern District of New York and elsewhere, the defendant JOANNA DE ALBA, did knowingly and intentionally violate the conditions of her release in <u>United States v. Joanna De Alba</u>, 19-CR-563 (DLI), by possessing and using fentanyl, a Schedule II controlled substance, in violation of federal and New York state law.

      (Title 18, United States Code, Section 3148)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

### Background

1. From in or about June 2018 to in or about May 2019, the defendant sold illegal narcotics online. The defendant operated online under the anonymous moniker, "RaptureReloaded." She advertised and sold narcotics on the dark web, including fentanyl, heroin, oxycodone, methadone, cocaine, methamphetamine, ecstasy, and other substances containing MDMA. The defendant obtained the narcotics from suppliers in Mexico, Canada, and the Netherlands. She delivered the narcotics using the United States Postal Service. She took payment for the narcotics in Bitcoin. (See ECF No. 1, 4)

2. On or about July 19, 2019, the Honorable Steven M. Gold, United States Magistrate Judge for the Eastern District of New York, issued an arrest warrant for the defendant for narcotics distribution offenses. (ECF No. 2)

3. On or about October 24, 2019, the defendant was arrested while attempting to cross the border from Mexico into the United States. At the time of her arrest, the defendant was carrying various quantities of heroin, methamphetamine, and fentanyl, concealed in her groin.

4. On or about November 26, 2019, a grand jury sitting in the Eastern District of New York, indicted the defendant in United States v. Joanna De Alba, 19-CR-563 (DLI), on three counts. (ECF No. 4) Count One charged the defendant with conspiracy to

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

distribute and possess with intent to distribute heroin and methamphetamine, in violation of Title 21, United States Code, Section 846.  Count Two charged the defendant with distribution and possession with intent to distribute heroin, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(C).  Count Three charged the defendant with distribution and possession with intent to distribute heroin and methamphetamine, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B)(viii).

5. On or about January 2, 2020, the defendant was arraigned before the Honorable Steven L. Tiscione, United States Magistrate Judge for the Eastern District of New York.  (ECF No. 8)  Judge Tiscione ordered the defendant detained pending trial at the Metropolitan Detention Center in Brooklyn, New York ("MDC").  (ECF No. 9)

Offense Conduct

6. On or about March 25, 2020, the defendant requested release on bond from the MDC, claiming compromised health and an elevated risk of infection for COVID-19.  (ECF No. 15).  On or about March 26, 2020, the Honorable Sanket J. Bulsara, United States Magistrate Judge for the Eastern District of New York, granted the defendant's motion for release from the MDC to a New York City homeless shelter.  (ECF No. 18)  In doing so, Judge Bulsara ordered the defendant not to "violate any federal, state, or local law while on release," (ECF No. 18-1) and to "refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner."  Id.  Judge Bulsara orally advised the defendant of the conditions of release, including the above-described conditions.  (ECF No. 19)  The defendant also acknowledged receipt of the conditions by signing the bond, which contained the above-described conditions.  (ECF No. 18-2).

4

7. On or about April 14, 2020, the defendant filed a motion seeking to modify her bail conditions to move from the New York City homeless shelter where she was staying (the "Homeless Shelter") to a private residence in Southern California. (ECF No. 20) On or about April 17, 2020 at approximately 11:30 a.m., the Honorable James Orenstein, United States Magistrate Judge for the Eastern District of New York, held a hearing on the defendant's motion. At the conclusion of the hearing, Judge Orenstein granted the defendant's motion to move her residence to Southern California.

8. On or about April 17, 2020, at approximately 5 p.m., an employee of the Homeless Shelter ("the Shelter Employee") contacted the government and left a voicemail, including a return telephone number. The Shelter Employee contacted the government because she learned through her own investigation of publicly available records that the defendant was a federal defendant. I have verified using a law enforcement database that the return telephone number is associated with the Homeless Shelter in a reverse telephone directory. I have also emailed with the Shelter Employee at an email address whose domain matches the internet website for the Homeless Shelter. I have also called the published main telephone number for the Homeless Shelter and confirmed that the Homeless Shelter employs the Shelter Employee.

9. In the evening of April 17, 2020, I contacted the Shelter Employee using the return telephone number, and the Shelter Employee reported the following:

- On April 16, 2020, at approximately 8:30 p.m., the defendant had overdosed on fentanyl. Specifically, overnight employees of the Homeless Shelter found the defendant unresponsive inside the facility and reported it to the Shelter Employee and other Homeless Shelter Management. Due to the defendant's condition, the employees called 9-1-1.

5

- Emergency medical personnel responded to the Homeless Shelter and, in the presence of Homeless Shelter employees, administered two to four doses of Naloxone to the defendant in order to revive her.[2] After regaining consciousness, the defendant, in the presence of Homeless Shelter employees, refused further medical treatment stating that she had a court hearing the next day (i.e. the bail hearing before Judge Orenstein).

- Approximately two hours later at 10:30 p.m., the same overnight employees of the Homeless Shelter found one of the defendant's co-residents (the "Co-Resident") unresponsive inside the facility. Due to the defendant's condition, the employees called 9-1-1 for the second time that evening. Emergency medical personnel responded to the Homeless Shelter and, in the presence of Homeless Shelter employees, administered four doses of Naloxone to the Co-Resident in order to revive her. The Co-Resident was subsequently hospitalized.

- The Shelter Employee confronted the defendant about the suspected overdoses on the morning of April 17, 2020 at approximately 10:30 a.m. The defendant told the Shelter Employee that she did not want to talk about the incidents because she had a court hearing shortly (i.e. the bail hearing before Judge Orenstein). The Shelter Employee told the defendant that she would have to notify the defendant's "probation officer" about the incidents. The defendant refused to provide her probation officer's name to the Shelter Employee because, she stated, she did not want to cause problems for her bail hearing.

- After the defendant's bail hearing before Judge Orenstein was completed on April 17, 2020, the defendant admitted to the Shelter Employee that she had used fentanyl the night before and that she had obtained the fentanyl from a person she knew in the area. The defendant further stated that she needed something to "take the edge off" for the hearing. The Co-Resident also admitted to the Shelter Employee that she had ingested fentanyl that had fallen out of the defendant's pocket.

- Due to the seriousness of the incident and the potentially lethal threat that fentanyl poses to Homeless Shelter residents and employees, the Shelter Employee contacted the government at approximately 5 p.m. on April 17, 2020, to report the incident. The Shelter Employee obtained the contact information for the government through her review of publicly available records regarding the defendant's case.

   10. New York City Police Department ("NYPD") records confirm the calls for emergency medical assistance to the Homeless Shelter, as described above. The NYPD

---

[2] According to the Centers for Disease Control and Prevention, Naloxone "is a life-saving medication that can reverse the effects of an opioid overdose." See https://www.cdc.gov/vitalsigns/naloxone/index.html (last visited 4/17/2020).

records also corroborate that the calls for assistance were for treatment of unresponsive individuals, suspected of having overdosed on narcotics.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant JOANNA DE ALBA so that she may be dealt with according to law.

In addition, it is respectfully requested that this affidavit and the requested arrest warrant remain under seal until the defendant is arrested in order to prevent the defendant's flight.

/s
GEORGE DIETZ
Special Agent
United States Attorney's Office
Eastern District of New York

Sworn to before me this
18th day of April, 2020

James Orenstein
Digitally signed by James Orenstein
Date: 2020.04.18 14:01:09 -04'00'

THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK